UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| PAUL MAZZIE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:04CV00081 AGF ) |
| CORRECTIONAL MEDICAL SERVICES, INC., DR. GREGORY RAKESTRAW, and DR. BENJAMIN GADDY, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the joint motion for summary judgment filed by Defendants Gregory Rakestraw and Benjamin Gaddy.[1] Plaintiff Paul Mazzie, a Missouri inmate, filed this action pro se under 42 U.S.C. § 1983, pro se. He claims that while he was incarcerated at the Northeast Correctional Center (NECC), Defendants, two prison doctors, violated his constitutional rights by failing to provide him with adequate medical treatment for various impairments.[2] For the reasons set forth below, Defendants' motion for summary judgment shall be granted in part and denied in part.

## BACKGROUND

Plaintiff asserts that he has the following medical conditions: (1) a prosthetic hip

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

[2] Defendant Correctional Medical Services has been dismissed by Order dated May 23, 2005 (Doc. #26).

replacement that is not functioning properly, causing Plaintiff to be wheelchair bound; (2) a herniated chest and abdominal muscle; (3) torn right and left shoulder rotator cuff muscles; (4) diabetes affecting his feet and toes; and (5) two blocked coronary arteries.

Plaintiff alleges that Dr. Rakestraw refused to request a special (or double) mattress that was recommended by an outside orthopedic specialist, Dr. Turnbaugh, as permitted by prison regulations, which would ease Plaintiff's multiple physical problems (Count I); failed to treat Plaintiff's hip condition with effective pain medication or the pain medication that was recommended by Dr. Turnbaugh, terminated Plaintiff's physical therapy too early, and thereafter did not allow Plaintiff use of an in-cell therapy device which had been recommended by Dr. Turnbaugh (Count II); reneged on a promise to provide surgery for Plaintiff's herniated and torn chest muscle, allowing the condition to progressively worsen (Count III); failed to properly treat Plaintiff's diabetes-related foot condition, allowing the problem to progressively deteriorate (Count IV); failed to properly treat Plaintiff's torn rotator cuffs with surgery, allowing the problem to progressively deteriorate (Count V); "failed to follow and falsified the medications that were recommended" by an outside heart specialist for Plaintiff's heart condition, did not treat the heart condition with effective medication since July 2003, and failed to recommend further tests and procedures to evaluate the seriousness of Plaintiff's condition (Count VI); and delayed providing Plaintiff with medication for a period of ten days to treat a case of pneumonia which Plaintiff had (Count VII).

All counts are only against Dr. Rakestraw, with the exception of Count III, which is against both Drs. Rakestraw and Gaddy. Plaintiff seeks actual damages, including for

pain and suffering; punitive damages; and injunctive relief in the form of an order compelling Dr. Rakestraw to make a written recommendation that Plaintiff receive a special mattress.

Defendants have submitted extensive medical records of Plaintiff's treatment at NECC. They assert that these records demonstrate that Plaintiff received appropriate medical treatment and that Defendants were not deliberately indifferent to his serious medical needs. Defendants also maintain that Plaintiff's claims based upon the alleged delay in treatment fail at the summary judgment stage because he has not submitted any medical evidence demonstrating the detrimental effect of such delay. Lastly, Defendants argue that they are entitled to qualified immunity.

Defendants briefly address each of Plaintiff's counts separately, with the exception of Count V. With respect to Count I, they argue that the record shows that institutional policy prevents Dr. Rakestraw from approving a special mattress for inmates in general population. In support of this assertion, Defendants have submitted the institutional reply to Plaintiff's grievance on this matter; the reply states that institutional policy did not allow extra mattresses to be issued by the medical department. Defs.' Ex. 11 to Ex. B. As to Count II, Defendants assert that the medical records demonstrate that Plaintiff was seen and evaluated by Dr. Turnbaugh on numerous occasions for his hip condition, and that Dr. Turnbaugh has concluded that Plaintiff's hip was "working well," and that there was nothing he could offer Plaintiff. Defendants argue, as to Count III, that the records show that they exercised their judgment and determined that surgery was not needed for Plaintiff's torn chest muscle, and that while Plaintiff may disagree with that medical

judgment, such disagreement does not set forth a constitutional claim.

Defendants argue that Count IV also just involves a disagreement with the course of treatment provided by Defendants as the medical records reflect that Plaintiff was examined on numerous occasions and received treatment for his diabetes and foot problems. Defendants refer to specific records from 2003 and 2004. Similarly, with respect to Plaintiff's allegations in Count VI about his heart condition, Defendants point to two record entries from May and June 2003, which they maintain show that Plaintiff was referred for an evaluation to an outside cardiologist, and that the records show that Plaintiff received substantial treatment for his heart condition.

Defendants assert that Count VII fails because the record entries from April 27 through May 3, 2004, show that Plaintiff was treated at a medical center for pneumonia and upon return to NECC, was immediately ordered into the special care clinic by Dr. Rakestraw and received constant medical attention during the next several days.

## DISCUSSION

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Johnson v. Crooks, 326 F.3d 995,

1005-06 (8th Cir. 2003); Hott v. Hennepin County, Minn., 260 F.3d 901, 904 (8th Cir. 2001).

The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law." Id. at 248. When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Inadequate Medical Treatment**

To survive summary judgment on a constitutional claim of inadequate medical treatment, a state prisoner must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"; the inmate "'must show more than negligence, more even than gross negligence.'" Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The inmate must also show more than "mere disagreement with treatment decisions." Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006). But an intent to harm need not be shown. Moore v. Duffy, 255 F.3d 543, 544 (8th Cir. 2001). Deliberate indifference may be manifested by prison officials intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment. Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir.

2002) (citing Estelle, 429 U.S. at 104-05).

Even at the summary judgment stage, proof of causation by expert testimony is required when a prisoner is complaining about treatment of "a sophisticated injury." Alberson, 458 F.3d at 765-66 (affirming summary judgment where prisoner's survivor did not submit expert evidence to prove causal connection between medical treatment provided decedent and his death from complications from Goodpasture Syndrome, a rare autoimmune disease that can affect the lungs and kidneys); see also Rowe v. Norris, No. 05-2580, 2006 WL 2711945, *1 (8th Cir. Sept. 22, 2006) (per curiam) (affirming district court's decision that prisoner presented insufficient evidence to create a jury question as to claim that prison doctor denied care that was directed by former prison doctor, including consultation with a gastrointestinal specialist for plaintiff's Hepatitis C, where plaintiff offered no "verifiable medical evidence" to establish that he was harmed by the denial); Senty-Haugen v. Goodno, ___ F.3d ___, 2006 WL 2588174, *11 (8th Cir. Sept. 11, 2006) (affirming summary judgment against prisoner who alleged that prison officials delayed treatment of his heart condition, broken leg, and inflamed cyst, where prisoner failed to present evidence that alleged delays in treatment worsened his condition, or expert evidence that the treatment he received was inadequate); Gibson, 433 F.3d at 646 (affirming summary judgment for prison medical providers on deliberate indifference claim by state prisoner, who had peripheral diabetic neuropathy, because prisoner did not present expert medical testimony to establish that alleged deficient treatment plan or alleged delay in treatment of prisoner's burned feet resulted in amputations of portions of right foot, rather than prisoner's medical condition, which predisposed him to foot

injuries, or fact that prisoner initially refused treatment).

Here, in response to Defendants' motion for summary judgment, Plaintiff has not submitted any medical evidence in support of his claims. Although Plaintiff's claims do involve serious matters, absent such evidence, Defendants' motion for summary judgment must be granted. The Court notes that this is not an unduly burdensome requirement. Even in regular malpractice cases, where only negligence must be proven, many states require a plaintiff to file an affidavit identifying each medical expert the plaintiff plans to call at trial and the substance of each expert's expected testimony. See, e.g., Senty-Haugen, 2006 WL 2588174, at *12 (affidavit requirement under Minnesota law); Smith v. Planned Parenthood of the St. Louis Region, 225 F.R.D. 233, 238-40 (E.D. Mo. 2004) (affidavit requirement under Missouri law). Furthermore, Plaintiff was put on notice as to this requirement by Defendants' arguments in support of their motion for summary judgment.

Upon review of the record, the Court concludes that the absence of medical evidence defeats all of Plaintiff's claims on summary judgment, with the exception of his claims in Counts I, III, and V. The record shows attention by Defendants to Plaintiff's medical needs raised in the remaining counts. Any finding that somehow the treatment provided exhibited a deliberate indifference on Defendants' part resulting in injury to Plaintiff, would require expert medical evidence. With respect to Count I, which arguably involves a matter not requiring expert medical evidence, the Court first concludes that Plaintiff has not rebutted Dr. Rakestraw's evidence that he did not have the authority to obtain a special (or double) mattress for Plaintiff in general population.

7

Even if a fact question exists on this matter, the Court does not believe that the failure of Dr. Rakestraw to do so would rise to the level of a constitutional violation. See Oden v. Shettleworth, 1995 WL 454051, at *9 (7th Cir. July 31, 1995) (affirming district court's decision that failure to provide inmate suffering from lupus with a second mattress as ordered by medical professional did not rise to the level of a constitutional deprivation); Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994). Accordingly, Defendants are entitled to summary judgment on Count I as well.

This leaves Count III, against both Defendants, and Count V against Dr. Rakestraw. In Count III, Plaintiff alleges that Defendants failed to provide surgery for Plaintiff's herniated/torn abdominal muscle, a condition Plaintiff alleges causes him great pain. Similarly, Count V alleges that Dr. Rakestraw failed to provide surgery for Plaintiff's painful torn rotator cuffs. The medical records establish that surgery for these conditions was planned, awaiting clearance by outside consultants. The record further establishes that on August 19, 2003, Plaintiff was cleared for the abdominal repair, and on November 25, 2003, was cleared for repair of the rotator cuffs. Yet these procedures have not been done and the medical records themselves offer no reasons for this. Defendants do not deny that Plaintiff has these medical conditions, that they are causing Plaintiff pain, or that he has been medically cleared for the surgeries. They simply assert in a single sentence in their motion for summary judgment that they decided that Plaintiff does not need these operations. Defendants provide no evidence to support this conclusory assertion, such as their own affidavits attesting that they made these decisions and the bases of the decisions. On this record, the Court cannot conclude that Defendants

8

have established that they are entitled to summary judgment on these counts.

**Qualified Immunity**

As noted above, Defendants contend that they are entitled to qualified immunity on all of Plaintiff's claims. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moore, 255 F.3d at 345. "Officers have a strong claim for qualified immunity when inmates do not tell them they are sick or have no obvious physical symptoms." Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 863 (8th Cir. 2006). Here, the Court concludes that genuine issues of material fact remain as to whether a reasonable prison physician would have known that failing to provide surgery for a herniated abdominal muscle and torn rotator cuffs such as exhibited by Plaintiff violated a clearly established constitutional right.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants for summary judgment is **GRANTED** in part and **DENIED** in part. The motion is denied as to Counts III and V, and granted as to all other counts. [Doc. #40]

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED**. [Doc. #54]

**IT IS FURTHER ORDERED** that Richard Kuhlman, Blackwell Sanders Peper Martin, LLP, 720 Olive Street, Suite 2400, St. Louis, MO 63101, is appointed as counsel

for Plaintiff. The Clerk's Office shall send counsel a complete copy of the file in this case.

      **IT IS FURTHER ORDERED** that a conference pursuant to Rule 16, Fed. R. Civ. P., shall be set by separate Order.

                                                    _____
                                                    AUDREY G. FLEISSIG
                                                    UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2006.